PILLSBURY WINTHROP SHAW PITTMAN LLP
Carolina A. Fornos
31 West 52 Street
New York, NY 10019-6131
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
carolina.fornos@pillsburylaw.com

*Attorneys for Plaintiff Gran Sabana Corporation N.V.*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GRAN SABANA CORPORATION N.V.,<br><br>  Plaintiff,<br><br>  v.<br><br>MITCHELL H. KOSSOFF,<br><br>  Defendant. | Civ. Action No.: |

**MEMORANDUM OF LAW IN SUPPORT OF
GRAN SABANA CORPORATION, N.V.'S ORDER TO
SHOW CAUSE FOR A TEMPORARY RESTRAINING
ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED
<u>DISCOVERY</u>**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

    I.   The Parties ................................................................................................................. 2

    II.  Gran Sabana's Real Estate Transactions and Its Need for the Escrow Funds .................... 3

    III. Kossoff's Egregious Misconduct and Broken Promises....................................................... 4

ARGUMENT ............................................................................................................................. 5

    I.   Gran Sabana Is Entitled to a Temporary Restraining Order and Preliminary
Injunction ................................................................................................................. 5

        A.  Gran Sabana Will Suffer Irreparable Harm if an Injunction Is Not Issued ................. 5

        B.  Gran Sabana Is Likely to Succeed on the Merits of its Claims ................................... 7

        C.  The Balance of the Hardships Tips in Gran Sabana's Favor and the Public
Interest Would Not Be Disserved By the Issuance of an Injunction ........................... 9

        D.  The Court Should Exercise its Discretion and Decline to Require the Posting
of a Bond................................................................................................................ 10

    II.  Limited Expedited Discovery Should Be Granted to Permit Gran Sabana to Track
Down its Escrow Funds and Discover Potential Assets to Encumber.............................. 10

CONCLUSION........................................................................................................................ 12

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*537 Realty Assocs. LLC v. Kossoff, PLLC, et al.*,
   No. 652289/2021 (Sup. Ct. N.Y. Cty. 2021) ............................................................................... 6

*Ayyash v. Bank Al-Madina*,
   233 F.R.D. 325 (S.D.N.Y. 2005) ............................................................................................. 10

*Doctor's Assocs. v. Distajo*,
   107 F.3d 126 (2d Cir. 1998) ..................................................................................................... 9

*Echo Design Grp., Inc. v. Zino Davidoff S.A.*,
   283 F. Supp. 2d 963 (S.D.N.Y. 2003) ...................................................................................... 4

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) ..................................................................................................... 5

*In re Feit & Drexler, Inc.*,
   760 F.2d 406 (2d Cir. 1985) ..................................................................................................... 5

*Friedrich v. Kossoff, PLLC, et al.*,
   No. 153465/2021 (Sup. Ct. N.Y. Cty. 2021) ............................................................................ 6

*Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Services of VA.*,
   144 F. Supp. 2d 241 (S.D.N.Y. 2001) ...................................................................................... 5

*Regeneron Pharma., Inc. v. U.S. Dep't of Health & Human Services*,
   No. 20-CV-10488, 2020 WL 7778037 (S.D.N.Y. Dec. 30, 2020) .................................... 5, 6, 7

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) ..................................................................................................... 6

*Sea Carriers Corp. v. Empire Programs, Inc.*,
   2006 WL 3354139 (S.D.N.Y. Nov. 20, 2006) .......................................................................... 5

*SSM Realty Group II LLC v. Kossoff PLLC, et al.*,
   No. 652305/2021 (Sup. Ct. N.Y. Cty. 2021) ............................................................................ 6

*Strike 3 Holdings v. Doe*,
   No. 20-cv-6596 (S.D.N.Y. 15, 2020) ....................................................................................... 9

*Ticor Title Ins. Co. v. Cohen*,
   173 F.3d 63 (2d Cir. 1999) ....................................................................................................... 6

## Rules and Regulations

Federal Rules of Civil Procedure
  Rule 26(d) ................................................................................................................... 9, 11
  Rule 26(f) ......................................................................................................................... 9

Pursuant to Fed. R. Civ. P. 65, Plaintiff Gran Sabana Corporation N.V. ("Gran Sabana" or "Plaintiff") submits this Memorandum of Law in support of its Order to Show Cause for (1) a temporary restraining order, enjoining Defendant Mitchell H. Kossoff ("Kossoff") from transferring, dissipating or otherwise disposing of any of his assets or Gran Sabana's Escrow Funds wherever they are located and whether directly or indirectly controlled by Kossoff at this time; (2) an order seeking immediate turnover and/or disclosure of where the Escrow Funds are held or transferred to; (3) a preliminary injunction freezing bank accounts owned or controlled by Kossoff at Chase Bank, Valley Bank, and Signature Bank which may contain the Escrow Funds or evidence of where the Escrow Funds were transferred; and (4) an order granting limited expedited discovery pursuant to Fed. R. Civ. P. 26(d), to issue subpoenas to Chase Bank, Valley National Bank and Signature Bank for the purpose of identifying all accounts owned or controlled by Kossoff and obtaining bank records of those accounts, including but not limited to, records of wire transfers to or from Kossoff's accounts from 2018 to the present and identification of any assets Kossoff may have to satisfy a judgment; to the extent to the subpoena responses from these banks identify additional accounts or locations of assets, supplemental subpoenas to trace the funds or assets; and subpoenas to Kossoff, PLLC to seek all Escrow Account banking records, including information on bank accounts owned or controlled by Kossoff.

## PRELIMINARY STATEMENT

Gran Sabana comes to this court seeking urgent relief: a temporary restraining order and injunctive relief to freeze certain bank accounts, together with expedited discovery, to thwart Kossoff's efforts to siphon away Gran Sabana's Escrow Funds in violation of Kossoff's duties and obligations as the attorney for Gran Sabana and as required under the Escrow Agreement. Without

1

such relief, Gran Sabana risks losing its Escrow Funds and jeopardizing real estate investments due to Kossoff's malfeasance.

From at least 2014 through the present, Gran Sabana trusted Kossoff – Gran Sabana's real estate attorney – with more than eight million in funds which Kossoff held in escrow to be used solely for Gran Sabana's contemplated real estate transactions. Unbeknownst to Gran Sabana, however, Kossoff stole over $4.5 million from Gran Sabana, causing Gran Sabana severe financial and reputational harm. This theft was confirmed by a business partner of Kossoff on April 7, 2021. Now, without these Escrow Funds, Gran Sabana's several real estate transactions – transactions which have been in contract for several years and are part of long-term real estate plans and investments. Gran Sabana now finds itself in the unfortunate situation of having to decipher the location of its Escrow Funds that Kossoff unlawfully converted.

The prejudgment freeze on Kossoff's bank accounts – upon information and belief, held at Chase Bank, Valley National Bank, and Signature Bank – is warranted here to ensure that Gran Sabana is able to recover its Escrow Funds back from Kossoff. Under Fed. R. Civ. P. 65, this Court is empowered to issue an asset-freeze and injunction and otherwise enjoin Kossoff from diverting and hiding his assets (not to mention Gran Sabana's Escrow Funds). As outlined below, Gran Sabana's exigent circumstances – including the imminent and irreparable harm that Gran Sabana will face if it loses its Escrow Funds – warrants the relief sought herein.

## STATEMENT OF FACTS

### I.      The Parties

Gran Sabana is a corporation engaged in the business of purchasing, selling and renting real estate in New York. (Compl. ¶ 5); Declaration of Giorgio Angelini ("Angelini Decl."), dated April 12, 2021, ¶ 2. Specifically, Gran Sabana is currently engaged in several real estate

transactions, whereby Gran Sabana is purchasing several apartments located in New York City which are part of a long-term investment plan years in the making. (Compl. ¶ 10); (Angelini Decl. ¶ 4).

Kossoff holds himself out as an experienced real estate attorney in the New York area. (Compl. ¶ 12); (Angelini Decl. ¶ 5). Kossoff is the managing member of Kossoff PLLC, a law firm located within this district. (Compl. ¶ 12). At all relevant times, Kossoff was retained by Gran Sabana (in exchange for legal fees) to represent Gran Sabana's interests in several real estate transactions and to hold Gran Sabana's funds in an Escrow Account for Gran Sabana pending closing of these transactions. (Compl. ¶¶ 13, 14); (Angelini Decl. ¶ 6). As Gran Sabana's attorney with sole control of the escrow account, Kossoff exercised exclusive control over the Escrow Funds, which were held in an IOLA Trust Account at Chase Bank. (Compl. ¶ 16); (Angelini Decl. ¶ 9).

## II. Gran Sabana's Real Estate Transactions and Its Need for the Escrow Funds

As is true in most real estate transactions, time is of the essence in Gran Sabana's real estate transactions. (Angelini Decl. ¶ 4). As is customary is most real estate transactions, Gran Sabana entrusted funds to Kossoff with the understanding that Kossoff would hold these Escrow Funds in an Escrow Account until closing. (*Id.*, ¶ 10). The parties' understanding was originally memorialized in the Escrow Agreement, executed on or about May 16, 2019, and thereafter continued as Gran Sabana engaged in additional transactions. (Compl. ¶ 14); (Angelini Decl. ¶¶ 7, 8).

Prior to April 7, 2021, Gran Sabana had transferred in excess of $8 million to Kossoff to be held in escrow. (Angelini Decl. ¶ 8). While some funds were properly used for closing specific

transactions, at least $4,506,349.25 remained in escrow. (*Id.*, ¶ 13). These remaining Escrow Funds, however, disappeared. (*Id.*)

In April 2021, Gran Sabana contacted Kossoff for the Escrow Funds to close on certain real estate transactions in New York City which had been under contract for several years and were finally ready to close. (*Id.*, ¶ 12). However, to Gran Sabana's surprise, on April 7, 2021, representatives of Gran Sabana were informed that the Escrow Funds – totaling approximately $4.5 million – were gone. (*Id.*, ¶¶ 12-13). According to Kossoff's partner at Kossoff, PLLC, Ms. Lisa Urban, Kossoff "pillaged" Gran Sabana's Escrow Funds, along with other clients' escrow funds. (*Id.*, ¶ 13). Gran Sabana tried several times to contact Kossoff to locate the Escrow Funds, but Gran Sabana has been unable to locate Kossoff in the days since Gran Sabana discovered its Escrow Funds were missing. (*Id.*, ¶¶ 13-14). Kossoff's partners informed Gran Sabana that he is missing. (*Id.*, ¶ 13).

### III. <u>Kossoff's Egregious Misconduct and Broken Promises</u>

Despite his promises under the Escrow Agreement – not to mention his legal and ethical obligations as Gran Sabana's attorney – Kossoff breached his duties and obligations to Gran Sabana. Specifically, Kossoff used approximately $4.5 million of Gran Sabana's funds for personal purposes, all without Gran Sabana's permission or knowledge. (Compl. ¶ 23).

As a result of Kossoff's egregious misconduct, Gran Sabana was forced to take extreme measures to mitigate its losses. Specifically, Gran Sabana has made efforts to obtain third-party financing to close its real estate transactions, has been forced to retain the services of attorneys to seek the relief sought herein, and now has to act quickly to ensure that its Escrow Funds are not depleted by Kossoff in the interim and undertake all efforts to try to recover these funds to prevent jeopardizing its long-term investments. (Angelini Decl. ¶ 17). In the interim, Gran Sabana is faced

with the prospect of reputational harm and, with every day that passes, the risk that its funds and any other assets held by Kossoff, will disappear and thwart any prospect of judgment.  (*Id.*, ¶ 18).

**ARGUMENT**

I. **Gran Sabana Is Entitled to a Temporary Restraining Order and Preliminary Injunction**

The standards for a temporary restraining order and for a preliminary injunction are the same.  *Echo Design Grp., Inc. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963 (S.D.N.Y. 2003).  To obtain a preliminary injunction, a party must show:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of an injunction, (3) that the balance of hardships tips in the plaintiff's favor, and (4) that the public interest would not be disserved by the issuance of an injunction.  *Regeneron Pharma., Inc. v. U.S. Dep't of Health & Human Services*, No. 20-CV-10488, 2020 WL 7778037, at *3 (S.D.N.Y. Dec. 30, 2020).

A. **Gran Sabana Will Suffer Irreparable Harm if an Injunction Is Not Issued**

"[T]o satisfy the irreparable harm requirement, [Gran Sabana] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

While monetary harm is ordinarily not considered to be irreparable, it can be where, as here, the plaintiff demonstrates defendant's "intent to frustrate any judgment on the merits."  *Sea Carriers Corp. v. Empire Programs, Inc.*, 2006 WL 3354139, at *5 (S.D.N.Y. Nov. 20, 2006).  Preliminary injunctions are thus "appropriate to thwart a defendant from making a judgment uncollectible."  *Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Services of VA.*, 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001); *accord In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) ("[E]ven where the ultimate relief sought is money damages, federal courts have

5

found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transfer[ring their] assets. . . .") (quotations and citations omitted).

As discussed herein, publicly available evidence (as well as the Declarations submitted herewith) demonstrate that Kossoff has the ability and incentive to hide or otherwise dispose of significant assets to frustrate Gran Sabana's attempt to enforce a judgment.  Specifically, numerous other victims have sued Kossoff for his egregious misconduct for amounts ranging from approximately $200,000.00 to over $2 million.[1]  With Kossoff currently "missing," and with what is believed to be $17 million in assets, he has the ability and means to flee and hide significant assets while Gran Sabana is left scrambling to recover its Escrow Funds.[2]  (Angelini Decl. ¶¶ 13, 18).

Additionally, it is well settled that harm to a company's reputation and goodwill constitutes irreparable harm.  *See, e.g.*, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). This is because damages to one's reputation are "difficult to establish and measure." *Id*.; *accord Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68-69 (2d Cir. 1999) (explaining that "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminable amount of business in years to come").

---

[1] *See, e.g.*, *SSM Realty Group II LLC v. Kossoff PLLC, et al.*, No. 652305/2021 (Sup. Ct. N.Y. Cty. 2021) (filed Apr. 7, 2021) (alleging that approximately $1.3 million was transferred to Kossoff to be held in escrow pending closure of real estate transaction; however, Kossoff "failed and refused to return Plaintiff's escrowed funds"); *see also 537 Realty Assocs. LLC v. Kossoff, PLLC, et al.*, No. 652289/2021 (Sup. Ct. N.Y. Cty. 2021) (filed Apr. 7, 2021) (alleging that approximately $2.59 million was transferred to Kossoff to be held in escrow; however, Kossoff never made wire transfer and plaintiff is unaware of "the disposition of the sale proceeds"); *see also Friedrich v. Kossoff, PLLC, et al.*, No. 153465/2021 (Sup. Ct. N.Y. Cty. 2021) (filed Apr. 9, 2021) (alleging that approximately $291,000.00 was transferred to Kossoff to be held in escrow and transferred to a third-party to settle action; however, Kossoff never tendered the settlement payment on plaintiff's behalf and now escrowed money is "missing").

[2] *See, e.g.*, https://commercialobserver.com/2021/04/real-estate-lawyer-mitch-kossoff-missing-amid-escrow-fund-lawsuits/

"Courts have determined that a loss of existing business and a decline in the opportunity for new business may qualify as irreparable harm." *Regeneron Pharmaceuticals*, 2020 WL 7778037, at *5. Mr. Angelini's declaration states that Gran Sabana is currently in contract with several sellers to purchase their apartments. (Angelini Decl. ¶ 16). The Escrow Funds entrusted to Kossoff, which have been "pillaged" by Kossoff, were a key component and prerequisite to these real estate transactions. (*Id.*) Due to Kossoff's egregious misconduct, Gran Sabana's significant real estate investments (along with the plans associated with these investments) are now in jeopardy, all while Gran Sabana attempts to mitigate its harm by obtaining third-party financing to complete these transactions. (*Id.*, ¶¶ 16-17).

Accordingly, Gran Sabana's harm is not fully monetizable, as significant investments spanning over the course of several years are now at risk, along with Gran Sabana's goodwill and reputation in the industry. (*Id.*, ¶¶ 16-17); *accord Regeneron Pharmaceuticals*, 2020 WL 7778037, at *5 (finding irreparable harm where plaintiff will "lose existing business and new customers to competitors" as a result of new rule issued by Centers for Medicare & Medicaid Services).

      **B.**      <u>**Gran Sabana Is Likely to Succeed on the Merits of its Claims**</u>

To establish a likelihood of success on the merits, "a plaintiff need not show that success is an absolute certainty. [It] need only make a showing that the probability . . . of prevailing is better than fifty percent." *Regeneron Pharmaceuticals*, 2020 WL 7778037, at *6 (internal quotations and citations omitted).

Here, Gran Sabana has established that its likelihood of success is higher than fifty percent. *First*, Gran Sabana's breach of contract claim against Kossoff is strong. Specifically, Kossoff and Gran Sabana entered into the Escrow Agreement, pursuant to which Kossoff promised to "hold such funds and other property as [Gran Sabana] may deposit with [Kossoff] from time to time,"

and that any withdrawals from the Escrow Account "shall be made only upon [Kossoff's] receipt of a detailed instruction letter signed by [Gran Sabana] providing [Kossoff] with instructions to make such disbursement." (Compl. ¶¶ 18-19); *see also* (Angelini Decl. ¶¶ 9-10). Thereafter, Gran Sabana continued to transfer funds to Kossoff for placement in escrow. (Compl. ¶ 22); (Angelini Decl. ¶¶ 8, 10). However, despite Kossoff's legal and ethical obligations to Gran Sabana, Kossoff, without Gran Sabana's knowledge or permission, siphoned Gran Sabana's Escrow Funds for his own personal use. (Compl. ¶ 23); *see also* (Angelini Decl. ¶ 13). Kossoff's actions unequivocally constitute a breach of his duties under the May 2019 Escrow Agreement because the funds have not been used as instructed. More specifically, Kossoff's partner, Lisa Urman, has confirmed that the Escrow Funds are missing and that it was Kossoff who "pillaged" those funds. (Angelini Decl. ¶ 13).

*Second*, the Complaint firmly establishes Gran Sabana's breach of fiduciary duty claim. As Gran Sabana's attorney, Kossoff owed duties of loyalty, fidelity, diligence and good faith towards Gran Sabana. In committing the egregious misconduct alleged in the Complaint, Kossoff breached these duties to Gran Sabana, causing Gran Sabana harm in various forms (monetary and reputational). More disturbingly, Gran Sabana was advised the Escrow Funds are not in the account, and Gran Sabana does not appear to be the only victim. *See infra* n.1; (Angelini Decl. ¶ 13).

*Third*, Gran Sabana's conversion and unjust enrichment claims are firmly grounded in the law, as Kossoff misappropriated Gran Sabana's Escrow Funds for his own personal use at Gran Sabana's expense. Gran Sabana has a possessory right in its Escrow Funds and entrusted said funds to Kossoff solely for use in connection with the real estate transactions. (Angelini Decl. ¶ 10). Rather than hold the Escrow Funds in the Escrow Account, Kossoff siphoned these funds for

8

his personal use at Gran Sabana's expense. (*Id*., ¶ 13). As a result, Kossoff was unjustly enriched and caused Gran Sabana direct harm (both monetarily and otherwise). Despite repeated demands for its Escrow Funds, Kossoff has yet to deliver Gran Sabana's $4.5 million back to it. (*Id*., ¶¶ 12-14).

*Finally*, Gran Sabana's legal malpractice claim is appropriately asserted against Kossoff. As alleged, Kossoff was Gran Sabana's attorney in several real estate transactions and, as a professional, Kossoff had the duty to use such skill, prudence and diligence as other members of his profession practicing in the legal community of New York City. Kossoff, in committing these egregious acts, did not fulfill his duties in ensuring that the Escrow Funds were appropriately transferred to the sellers at the time of closing. (*Id*., ¶ 12).

### C. The Balance of the Hardships Tips in Gran Sabana's Favor and the Public Interest Would Not Be Disserved By the Issuance of an Injunction

The relief sought herein will not disserve the public interest. Specifically, an order preventing Kossoff from disposing of or otherwise improperly retaining Gran Sabana's Escrow Funds would actually reinstate the *status quo* during the pendency of this litigation. As discussed above, Kossoff owes duties to Gran Sabana to return the Escrow Funds upon demand and Kossoff has completely thwarted his obligations (legal and ethical) under the circumstances.

Additionally, the balance of the hardships clearly tips in Gran Sabana's favor. Gran Sabana requires its Escrow Funds as soon as possible, as such funds were a key component of several real estate transactions that are currently pending. (*Id*., ¶ 16). Without these Escrow Funds, Gran Sabana's years of investments and long-term plans are at risk. Conversely, no harm will be suffered by Kossoff here in the event the Court issues an injunction. Rather, as noted above, Kossoff will simply be obligated to perform his contractual, legal and ethical duties—far from a hardship.

### D. The Court Should Exercise its Discretion and Decline to Require the Posting of a Bond

In the event that the Court grants Gran Sabana's request for relief, Gran Sabana respectfully requests that it exercise its discretion to dispense with the filing of a bond in this case. The harm to Kossoff in the event the relief sought herein is granted will be minimal. That is, Kossoff will be restrained from continuing any unlawful conduct and will be required to return Gran Sabana's Escrow Funds – funds which belonged to Gran Sabana and over which Kossoff has no rights. Accordingly, there is no harm to Kossoff under these circumstances, warranting the exercise of the Court's discretion to dispense with the bond requirement. *See, e.g.*, *Doctor's Assocs. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1998) (noting that the court may "dispense with the bond requirement where there has been no proof of likelihood of harm.") (internal quotation and citation omitted).

### II. Limited Expedited Discovery Should Be Granted to Permit Gran Sabana to Track Down its Escrow Funds and Discover Potential Assets to Encumber

Pursuant to Fed. R. Civ. P. 26(d), this Court has the discretion and authority to order expedited discovery before a Rule 26(f) conference is held. *See, e.g.*, *Strike 3 Holdings v. Doe*, No. 20-cv-6596, at *3 (S.D.N.Y. 15, 2020). When considering requests for expedited discovery "courts apply a flexible standard of reasonableness and good cause." *Id*. (internal quotations and citations omitted); *accord Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005).

Here, Gran Sabana has made a strong showing of the likelihood of success on its claims. Relatedly, good cause exists here because Gran Sabana has been unable to locate Kossoff since it discovered its Escrow Funds were missing and Kossoff has great incentives to hide his assets (as well as Gran Sabana's Escrow Funds). Due to this incentive and opportunity to hide these assets, and the ever-growing urgency of Gran Sabana to locate and obtain possession of its Escrow Funds

before Kossoff depletes them, Gran Sabana respectfully submits that limited expedited discovery is appropriate here to attempt to trace the transfer of the Escrow Funds that belong to Gran Sabana.

Gran Sabana's expedited discovery requests are also narrowly tailored to discovery regarding its Escrow Funds. Specifically, and as set forth in the accompanying Order to Show Cause, Gran Sabana seeks to issue:

(1) subpoenas to Chase Bank, Valley National Bank and Signature Bank for the purpose of identifying all accounts owned or controlled by Kossoff and obtaining bank records of those accounts, including but not limited to, records of wire transfers to or from Kossoff's accounts from 2018 to the present and identification of any assets Kossoff may have to satisfy a judgment;

(2) to the extent the subpoena responses to these banks identify additional accounts or locations of assets, supplemental subpoenas to trace the funds or assets; and

(3) subpoenas to Kossoff, PLLC to seek all Escrow Account banking records, including information on bank accounts owned or controlled by Kossoff.

Based on public filings and Gran Sabana's own course of dealing with Kossoff, Gran Sabana has reason to believe that Kossoff either owns or controls bank accounts with Chase Bank, Valley National Bank, and Signature Bank. (Angelini Decl. ¶ 19). Accordingly, Gran Sabana submits that these limited expedited discovery requests are appropriate under the circumstances.

**CONCLUSION**

Based on the foregoing, and as supported by the Declarations of Mr. Giorgi Algelini and Ms. Carolina A. Fornos, Gran Sabana respectfully requests that the Court issue an Order granting the relief set forth in the accompanying Order to Show Cause.

Dated:   April 12, 2021

PILLSBURY WINTHROP SHAW PITTMAN LLP

BY:  */s/ Carolina A. Fornos*

Carolina A. Fornos
31 West 52nd Street
New York, NY 10019-6131
Tel.: 212-858-1000
Fax: 212-858-1500
carolina.fornos@pillsburylaw.com
*Attorneys for Plaintiff Gran Sabana Corporation, N.V.*